Good morning, Your Honors, and may it please the Court, my name is Sarah Howard. I am here on behalf of the appellant Darrell Hunt in this matter, and I'd like to reserve five minutes for rebuttal, please. Your Honors, first I will address the issue of whether the search warrant affidavit provided sufficient probable cause in this case. Unfortunately, I must start by acknowledging an error in my discussion of the case of United States v. West, as the government pointed out. There were two search warrant affidavits in that case, and this Court held that the first affidavit at issue was too bare-bones to support probable cause. However, that error doesn't affect the fact that the case is still instructive here. The affidavit which supported the search warrant for the GPS data of my client's cell phone was still too bare-bones to support probable cause in this case. Here, well it was two pages long, but the parts which related specifically to my client were very few. An unnamed confidential informant bought drugs twice from someone other than my client. The unnamed confidential informant said my client transported drugs from Chicago to Michigan and had my client's phone number. The police also verified the fact that my client had prior convictions for drug distribution. That was the extent of the affidavit, and that does not provide sufficient cause to believe that my client was selling drugs at that time simply because an unnamed confidential informant was able to buy drugs from someone else other than my client. There's no discussion of how. Doesn't that purchase have less to do with a relationship between the informant and your client and more the groundwork of reliability? It does certainly establish some reliability that at least this person knew where he or she could purchase drugs, but it doesn't provide any connection to why that person would have any information that's reliable about my client. It doesn't talk about I saw my client, he or she saw my client at a home with drugs in the presence of this person that they bought drugs from. It doesn't provide any connection. So clearly this person has some connection to the drug trade, but it doesn't establish why this person would have any reliable information about Mr. Hunt. Now this was an affidavit that was used to obtain a search warrant for the cell tower records, is that right? For the GPS location data. So should that make a difference that it wasn't a search warrant to search a home or some private place, but rather was to seek GPS data? I believe that for the period of time here we're talking about a 30-day warrant, the period of time, the fact that the phone, assuming it's on Mr. Hunt's person, is going to go with him into private homes, into doctor's offices, into any number of other places you might travel. But what would the GPS data show? Would it show that he was in Dr. X's office or would it show that he was in a two-mile radius or something like that? It would certainly show that he was within the vicinity of that facility. But you wouldn't have a clue whether he was in Dr. X's office or the video store. You would be able to get fairly close, Your Honor. So I think you would certainly be able to make some inferences about where he was traveling. You talked about probable cause being required. Is the test probable cause or is it reasonable suspicion? In what case would you rely on for that? Well, I believe that the test here is probable cause since they're applying for a search warrant. This is not a probation officer going to do a search. This is a drug interdiction team applying for a warrant, not relying on the fact that he's a probationer or a parolee. So any warrant, regardless of whether it is for GPS data or like what if it were seeking cell tower information? In my view, Your Honor, it still provides information that a person has a reasonable expectation of privacy in. It still can track data which show your daily activities and the things that you're doing in your life. And in my view, all of it should require probable cause. And can you give me a case to support your view? Well, at least the Powell case from the Eastern District of So that's a district court case. It is a district court case, Your Honor. But talking about... That our circuit then reviewed on appeal? No. In United States versus Skinner, this court said you could obtain GPS data for a shorter period of time to track someone who is traveling on public thoroughfares, just as the police may conduct surveillance and without a warrant as long as you're in a the longer the police are using such data to track where you're going, the more likely it is that they're tracking data into private homes, other private locations, areas where there's a reasonable expectation of privacy. So along a scale of a somewhat sliding scale of we expect the longer the data is collected, the more likely you are to be going into private areas. And this was a 30-day warrant. Doesn't it matter here that the, what was at issue, was his traveling approximately two times a month or every other week outside the state when that was in violation of the conditions of his parole? I don't think it matters here, Your Honor, because they weren't investigating a I guess the question for me is, if the accusation and the purpose of the warrant is to see whether every other week he goes to Chicago where supposedly he picks up drugs, how practically could that be evaluated without having a period that at least extends over a two-week time frame? Well, they have other methods of attempting to find some other information to corroborate that that's exactly, that this person's information is correct and some of those methods. You just say they can't get a warrant that long, even if it's a part of the investigation and the accusation is travel every other week? I think they might be able to get a warrant this long if they had more probable cause to back up the affidavit in the first place. If they had more information about how this confidential informant knew this information, particularly about Mr. Hunt, that that's in fact what he was doing. But it doesn't have the information to indicate that this informant's suppositions about Mr. Hunt are reliable with respect to him. I think you could get a warrant for a two-week period, a 30-day period, if you've got more to back it up in the first place. But with what they have here, no, I don't think they had probable cause to get a warrant for that stretch of time. I know you have some other points you probably want to get to. I do, Your Honor, but if you're interested in this one, I'm more than happy to talk about it. Also, under Rodriguez, I believe that the vehicle here was seized for longer than was permissible under the Fourth Amendment without developing further reasonable suspicion. We know it's undisputed that this was a pretextual stop, which is of course permissible, as long as there is a traffic infraction being investigated, being actually investigated during the stop. Did they know at that time that Mr. Hunt had violated his parole condition by traveling out of the state? They knew that his phone had traveled out of the state. Did he admit that he didn't, wasn't there a question that was asked, where have you been after the stop? There was. And then the answer was, oh, we were at a family event in Chicago. That's what his daughter said, his daughter or his wife, one of the front seat passengers. Right. So at that point, don't they know that he has violated his parole, and how can they be unlawfully extending the stop? Well, because they were there pretextually to investigate the traffic infraction of Ms. Hunt. That was the testimony. Well, I do understand it was a pretextual stop, but once there is this admission by a family member that, oh yeah, we were in Chicago, and the officers knew that he was not supposed to be in Chicago because he was a parolee, then even if there is an otherwise unlawful extension of the stop to get the dog, why does it matter if they could, couldn't they seize Mr. Hunt for parole violations at that point? They could have placed him under arrest for parole violations, I chose to continue with the pretext of investigating his daughter for a traffic infraction, for running the names in the car. They did nothing further to place him under arrest for a parole violation, anything like that. And I don't. Didn't they ask for the automobile rental information? They did, Your Honor. And none of them were authorized to drive. Doesn't that also allow an extension? I don't believe so, Your Honor. There was no indication. Could have been a stolen car? I suppose it could have been, Your Honor, but that would have been a somewhat likely occurrence with a car with two children, his wife, his daughter, shopping bags in the back, in addition of the fact that they had indeed been to a baby shower, and to back up the story of the two adult females in the front seat. I see your red light is on. If you want to continue, that's fine, or if you want to save your time for rebuttal, that's fine. I will save my time for rebuttal, Your Honor. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Stephen Baker on behalf of the United States. I want to start with the search warrant information the Court was speaking with Mr. Hunt's counsel about before. There was ample probable cause for this search, and that's what they applied for in this case. The investigators in this case had a reliable informant who had given them information, and that reliability had been tested the two days prior with two separate controlled purchases. But they were controlled purchases from other people. Does that make a difference? It makes a difference in terms of the degree of information about the individual, about which the affidavit is asserting information, but it doesn't make a difference. What it does make a difference most to, for the purpose of the confidential informant, is the reliability. There was testimony from Detective Hall at the hearing that two controlled purchases is often a shorthand within the state court in Muskegon County for reliability of a confidential informant, and that's exactly what Detective Hall was talking about. That same confidential informant had gone through all the rigors of a controlled purchase, had been observed by officers, had been provided confidential funds, had purchased controlled substances on two occasions that worked out, and that information given by that confidential informant was not only tested, but proven on the two prior days. That gives evidence that that confidential informant can be trusted. Although it is perfectly possible that a confidential informant could have it out for an individual, that confidential informant could have it out for these two other people that the confidential informant was dealing with, and then make up things about the enemy, who hypothetically here is Mr. Hunt. Your Honor, that's correct, and that is possible, which is why the court requires, and probable cause requires, testing that confidential informant. In this case, what Detective Hall did for corroboration was to test Mr. Hunt's criminal background. He was actually on parole for the same offense the confidential informant is alleging that he is committing. The confidential informant also gave additional information, in-depth information about Mr. Hunt, saying roughly every two weeks he goes for a large amount of heroin and cocaine. That's relatively specific in terms of what he's alleging, that he goes to Chicago. And it's also important, as the court pointed out in the questions to defense counsel, that Mr. Hunt, he's alleged to go to Chicago. What are they asking for here in terms of this warrant? It's the nexus of the warrant to the exact information thereafter, the location of his cell phone. And the source also had Mr. Hunt's cell phone. What they're trying to track here is exactly the veracity of the reliable informant's information. When does he go to Chicago? The location information of that cell phone will indicate exactly that. Do you agree that probable cause is the standard rather than reasonable suspicion for this type of a search warrant? I do for search warrants seeking GPS, but under Skinner, that is not required in all situations. I agree for the purpose of this case and the arguments that we're advancing for Mr. Hunt's case, because a warrant was sought for. That is actually the department's policy right now. We seek warrants for GPS information on phones in the Department of Justice. But that is not the precedent of this court. Skinner allows for other situations where there might be situations where GPS information, as the court indicated, not being highly specific to the area, that it's not needed. We are not asking the court to reconsider that situation. We are asking the court today. Given the facts that were presented in the four squares of that warrant, there was probable cause found here and the magistrate judge had reason to believe that the location information of Mr. Hunt's phone would be valuable to the investigation. And that's borne out by how the investigation actually played. They watched the phone to see where it went. And when he came back from Chicago, not on one occasion, but on two separate occasions, each time they acted on the information. It was the second occasion on which he was led to the recovery of the heroin and the cocaine that brought Mr. Hunt before the court. What about the issue that your opponent raises about the extension of the search because of the arguable delay in the dog arriving? I believe that issue is misappropriated to this case, Your Honor. And the reason is because Rodriguez was a case of a cold stop. As the court brought out in the direct questioning of the defense, this was a pretextual stop. There was reasonable suspicion when they pulled the car over. The information of the investigative team already indicated that Mr. Hunt, a parolee about whom a confidential informant, reliable confidential informant had indicated that he had traveled to Chicago to get drugs multiple times per month, had actually been to Chicago for a short amount of time, several hours that day and driven back. Given that information, there was reasonable suspicion for the stop on that information alone. But that reasonable suspicion for the ongoing drug investigation is actually overlaid with a pretextual stop in this case. As there was evidence in this case and the video showed the district court when reviewed, there was reason for the traffic stop in the first place. Mr. Hunt's daughter had been driving in the left-hand lane for several miles or for a mile and a half to two miles with the testimony of Trooper Boven at the district court. And then when she traveled into the right-hand lane, she crossed over the center line several times. So there were two traffic violations that he stopped her for. In the course of those traffic violations, in less than ten minutes, he approached the car, spoke to the people in the car where they verified the information. They'd been to Chicago that day. The trooper who was making the stop, Trooper Boven, was actually familiar with Mr. Hunt. He had the information from the investigative team, but he also knew that Mr. Hunt had been on parole and had been a part of a separate search of him a week before, knowing that he was on parole and was forbidden from leaving the state while they're admitting they've been to Chicago. All of that is building. So when, is it your argument that when you have a pretextual stop that is overlaid with other factors, like are in this case, that you don't have to comply with the reasonable time frame that would take to investigate the stop itself? That you have unlimited time to? Not unlimited time, Your Honor. No, not at all. My argument is that the reasonable suspicion in this case allowed for the more than reasonable time that occurred here. And there are two separate reasons for that reasonable time. I would argue to the court, though this is not the factual scenario completely here, based upon the traffic stop alone, based upon the left-hand lane driving and the crossing over with the stop, we were within a reasonable amount of time for a normal traffic stop here, what Trooper Boven did. Is the test, what is the reasonable amount of time for a normal traffic stop? Or is it whether the trooper here had completed or should have completed all of the activities necessary to give a ticket to the driver? And the argument that I understand the defense is making is that this stop was extended beyond that and that there was this sort of desultory typing that was allowing more time for the drug dog to show up. The argument is that the amount of time should be justified by the reasonable suspicion. It should be a reasonable amount of time based upon the suspicion at issue on any given stop. If this stop were merely a traffic stop, Your Honor, Trooper Boven was behaving exactly as he should and completing his process in the time that he should. But that is not what was going on here. It wasn't just a traffic stop. The test is whether the reasonable suspicion of the officer investigating has enough time and behaves reasonably in terms of his response in the investigation to fit within that time. And in this case, with the ten minutes total before the canine shows up and alerts to the dog, it was well within that time. He was also So if the officer had said, well, I guess that's really not a traffic problem, but you're going to wait here because I've got a canine unit coming. I'll sit in my car, you sit in yours, and when it gets here, we'll complete this. Would that have been appropriate? If the canine had arrived in immediate order within a reasonable amount of time, given the suspicion in the case, Your Honor, yes, it would. And what a reasonable amount of time for that to happen would be is for this Court to decide. But I would argue to this Court that the ten minutes in this case would have been sufficient. But to try to understand your answer to Judge Strange's question, if the officer had not been attempting to check the records of the three adults in the car, but if the officer had just gone back to his police car and sat there waiting for the canine, are you saying that ten minutes is a reasonable amount of time for a canine to appear, and therefore that would be fine under my hypo? Under your hypo, I believe ten minutes is reasonable, Your Honor, but I don't So it doesn't matter in your view whether the officer was checking the records because there was reasonable suspicion based on the parole violation? Your Honor, I don't mean to be as absolute in saying it doesn't matter what the officer is doing. You're correct. There needs to be activity ongoing for not only the textual stop, but the pretextual stop. He needs to be behaving in a way that is typical of a stop. He needs to be not only protecting himself, but they don't need to be detained an unreasonable amount of time. And if they're just sitting there with him with nothing left to do, that would be true. Okay. And I thought that was part of the defense argument, was that the officer was unduly extending the checking of the records, and that that could be understood by listening to and looking at the video, which had some desultory typing on it. Your Honor, I think you've explained the defense argument very well. Uh-huh. Thank you. I disagree with the facts of that argument. I think that the officer was diligent in his preparations and his typings. He has three adults in the car that he's checking. You don't just type in terms of reviewing criminal records and criminal histories of individuals. You also scan through information. He did all that within the five to six minutes while he's in his car after speaking with them. Additionally, he had reasonable suspicion based upon Mr. Hunt's status as a parolee and his travel outside of the state. So does that reasonable suspicion, let's hypothesize that that's the key feature here, does that mean then that the officer can call for a drug dog, be planning to arrest Mr. Hunt because of his parole violation, but then wait for the drug dog to appear to find drugs? Or does that matter? I mean, you could say that they would impound the car and they would find the drugs anyway, or you could have various theories. You could. Under your hypothetical, Your Honor, apply to the facts of this case. There's an ongoing investigation within the contents of that car and the individuals in that car anyway. The officer has probable cause to arrest him for violation of his parole, which he knows. He also knows, in the context of this case, that he's part of a wider narcotics investigation. In fact, Trooper Boven knew that that investigation had been a week before where there had been a prior stop of Mr. Hunt. And there were no drugs found then? Exactly. Did Hunt consent to the search in that one? He did. And Mr. Hunt, by conditions of his parole, has consented to a search of his person and his property at any time requested by a peace officer or a parole officer, which is one of the reasons the government argues that he doesn't have Fourth Amendment standing to advance in this case either. But in this case, continuing with Your Honor's hypothetical for what's going on and what he's doing, though he has probable cause to arrest Mr. Hunt, there are two other adults in that car. As Trooper Boven gets there, he has some knowledge of Mr. Hunt, but he doesn't know how much Mr. Hunt's wife or his daughter is in on the information that they have or even if there are drugs in that car at that time. He's continuing that investigation. And because of the information that not only leads to the cause to arrest Mr. Hunt for the parole violation, which is something the week before they hadn't done because of the ongoing investigation, that reasonable suspicion in that instance, under Your Honor's hypothetical, continues because he's still investigating. There might be drugs in this car. Consistent with the information that the team has, that's one reason that Mr. Hunt goes to Chicago. And we don't know how many people in this car are aware of that. What we do know is that the information on the car doesn't allow for any of these people to drive the car. And so he's investigating those things at that time. And the best and next best bit of information he can ask for is probably a canine sniff of that car. Interestingly, Your Honors, the week before, Lieutenant Harvett had also asked for a canine to come to the scene on September 7th. The canine was more than 10 minutes out when they finished searching the car. And so they let Mr. Hunt go. For the sake of the covert nature of the ongoing narcotics investigation and because it would have been unreasonable, the officers even testified they were aware of court rulings. You can't just hold people to wait for a dog. So they let him go on September 7th. They had searched his car pursuant to his consent. But on September 13th, the dog was en route and he's still running the background on new At that point, part of the investigation as well. Does the record indicate who was the renter of the car and what that person's relationship was to any of these people? Is that in the record? It is in the record, Your Honor. The exhibit from the Enterprise Rental and testimony about that exhibit was in, it was a Patricia Wohlford. She was not any of the individuals in the car. And there was no testimony about her relationship to any individual in the car. What there was testimony about was that the rental agreement did not authorize other drivers. And there was a subsequent search of Mr. Hunt's car where he had, leading up to their trip, talked to an individual under a separate, it's in the record, but it's spelled phonetically in the record under the saved name in his phone, a Matisha. So it's Patricia Wohlford Matisha. And then there was conversation about picking up a rental car. But the agreement does not allow for anyone else to be driving the car. And was the agreement in the car? It was, Your Honor. Which is one of the issues that this court has raised, the availability of that agreement would have a play into the standing of the individuals in a rental car, even if they're not authorized, whether they had a possessory interest and could advance Fourth Amendment standing. The important part of the government's argument on standing is it applies specifically to Mr. Hunt. We're not asking about his wife. We're not asking about his daughter. We're not asking about his two grandchildren sitting next to him in the back seat. He is a passenger in a car for which no one in the car has a lawful possessory interest in the car in the terms of the rental agreement. He, therefore, under Baugh, has no standing to advance the Fourth Amendment claims in the search of the car. Additionally, even though under Baugh, as a passenger, he would have standing to raise his own detention, Mr. Hunt, as this court knows from his parole status, and as Mr. Hunt knew from his parole status as he displayed the week before, had no right to object to his detention for a lawful search because he was a parolee at the ask of the police officer. On one other issue, I think there's some concern, some appropriate concern, about whether his statements were coerced by saying to his daughter that, saying to him that we might have to make a call to child protective services. I would think that to a grandfather stands as quite a threat. I would agree with you, Judge Strange, that that would be a threat to a The record in this case does not reflect that that's the way that information came to Mr. Hunt at all. What is reflected in the record is from Detective Hall's testimony, where he couldn't recall whether he had raised the issue with the defendant at all, and that was the only testimony on the issue. What Detective Hall did say is that in such circumstances where his investigative team finds children in the proximity of the transmission of large amounts of drugs, they are under obligation to refer the case to CPS. He did not say that he threatened Mr. Hunt with it at all. He did not say that he said, hey... Do you think the record does not reflect that it was said out loud that Mr. Hunt heard it? Detective Hall specifically testified that he did not recall whether he said that or not to Mr. Hunt. He did say that is common procedure in cases where we find large amounts of narcotics in the proximity of children, we have to refer it to CPS. Detective Hall's testimony was that he'd have to do that. It wasn't a threat. He believed that they'd done that here. There was then information proffered to the court based upon information we received at the district hearing from the other investigators that the children went home with, the grandchildren went home with their mother that evening after all the investigation. But the important part there, Your Honor, is I agree with you that would be coercive if it were threatened. Detective Hall spoke to Mr. Hunt back at the police station after he'd been arrested, after the drugs had been found, and after he had already confessed to Trooper Boven that there were drugs in the back of the car. None of that was preceded by any information about Child Protective Services, and indeed, Detective Hall did not threaten Mr. Hunt at all with that information. He simply testified that that's something he'd have to do. And honestly, Your Honor, if a one and a three-year-old are in a car while someone is transmitting over 100 grams of heroin and over 400 grams of cocaine, CPS should be involved to make sure that they're safe. I think that consideration was taken. Those children went home with their mother. The information in the case, as the defense pointed out, indicated that their mother had no knowledge that the drugs were in the car, and Mr. Hunt indicated the same thing. But the protection and the safety of the children is not an assessment other than an immediate assessment for Detective Hall and his team to make. That's a Child Protective Services assessment, which is why they make the recommendation. Additionally, Your Honor, in answer to your question, it was Mr. Hunt that created the scenario that creates that very coercion that the court is aware of and worried about for him. He's the one that arranged for his family to go with him, and he put them in the jeopardy of that sort of risk where Child Protective Services would become involved by his activity. Did he feel guilt about that? I imagine exactly, as you pointed out, that a grandfather would, but maybe that's one reason that he felt compelled to confess his activity and what was going on in the car to protect his other family members that he had endangered. But that's not coercion by investigators.  to confessions. And your red light is on. Thank you very much. Thank you, Your Honor. I'll start with Mr. Baker's last point. The testimony of the officer was he could not recall if he mentioned that fact to Mr. Hunt during the stop. We don't know if he did, because there's no objective dashboard camera video evidence. It was turned off by the officer. Do we know what Mr. Hunt says? We, there was no testimony about that at the record, at the hearing. However, the dashboard camera issue is extremely problematic for a number of the issues in this case. The officer, the dashboard camera is there specifically to record what goes on, so we know, of course, later. You're really going into an issue that was not raised earlier in this argument, so I think you should rely on your brief for it as opposed to bringing up a new issue now. Yes, Your Honor. In my view, what Mr. Baker talks about as being the totality of the circumstances actually weighs in favor of there being less reasonable suspicion and not more. This officer had stopped my client, this was the third stop in under three weeks of my client. The stop prior was also after the GPS data had said that Mr. Hunt's phone had been to Chicago. The car is searched fully, nothing is found. At that point, I would say that the reliability of the confidential informant should be called into question, not supported. How does it work then that at that search they knew he had been to a location that was in violation of his parole, even though they found nothing? Well, it certainly supports the idea that perhaps Mr. Hunt was violating his parole, perhaps he was visiting someone in Chicago, but  when they follow, when they know the car has recently returned and they stop it thinking that they're going to find something because he's just been back from Chicago. And the fact that they left without waiting for the drug dog is really of no import since they'd fully searched the car, they didn't need a drug dog at that point, there was no need to wait for one. So they had these two, and then you have to stop before that, before they get the warrant, where the same trooper had stopped my client in a So the pretextual nature of this stop, I don't think helps here the formation of reasonable suspicion. I think it actually hurts that we again have indications by the statements made by the women in the car, we have what they can see through the windows that actually supports the story that they've just been to a family baby shower together, that they're traveling with family. It decreases the likelihood they're going to find something in this car, not increases it, contrary to what Mr. Baker says. The other, one of the other problems for the extension of this stop is that again, the testimony of the officer, he admitted on cross examination that he was outside of the vehicle at the time that the canine deputy arrived, which indicates he wasn't doing anything anymore to, and that's at page ID 310 in this record. Was he outside because he saw the canine vehicle coming up or are you saying that the record shows that he was outside just sort of looking around, waiting? He acknowledged he was outside when the deputy arrived. That's the exact testimony. He said on direct that I could see the deputy arrive in my rearview mirror. I had, he says on direct, I had just completed running the records of these adults. But if he said, as you just said, I could see the deputy arriving in my rearview mirror, that suggests that the officer was in the car and got out because he saw the canine arriving. Well, the testimony is somewhat contradictory because he admits on cross examination that he was outside of the car, which from the audio is what it sounds like to me. But of course we don't know exactly what happened. That's the testimony. In any event though, he's clearly waiting for the deputy and causing these tasks to take longer than they need to. He admitted he never did anything further to investigate any driving infractions of Mercedes Hunt after asking her the initial question if she'd been drinking. She clearly had not been drinking. He did nothing further to investigate that. He took no steps to write a ticket. All he did was run the records. He had extensive and unusual experience with this particular individual. He had stopped him three times in under three weeks. They had been watching him closely. He knew this guy's record fairly well, I'm imagining at that point. Didn't need a lot of time to review it. He had extensive history with Mr. Hunt. They testified it would not take very long to run the records of people, of the other occupants in the car. This stop, and when you listen to the stop itself, it is the world's slowest typing. What, what, what, what about the idea that because there was reasonable suspicion based on the parole violation of Mr. Hunt, that there is more time allowed? Cause they could arrest Mr. Hunt and then for the parole violation. Certainly they could have. And then have the drug dog come up as they're arresting Mr. Hunt, right? I don't think so because they, they certainly can arrest him for the parole violation. They've got reasonable suspicion of that, but that doesn't, again, help them. I think, get into that car with the drug dog. They still have not, they have reasonable suspicion. He left the state to go to a baby shower with his family and that's a parole violation. But at this point, they don't have reasonable suspicion that he's going to have drugs in that car based on the entire totality of the very unusual circumstances we have here. I mean, usually you don't have officers that have this much experience with a particular individual, but we do here. And here, I think there's no reasonable suspicion that you're going to find drugs in that car. If they want to arrest him for violating parole, go ahead. But that's not what we have here. And that would take time to do. I assume it takes time to arrest somebody. And so during, because the drug dog arrives in 10 minutes. And had they done that, this would be a different argument, but they didn't do that. They relied solely on the, we're investigating Mercedes Hunt for this traffic violation and running the records in the car. And that they sat, they, they sat on that. And that's what we have here. And your red light is on as well. Thank you very much. Thank you both for your argument. The case will be submitted with the clerk. Call the next case, please.